IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHIANNE JONES<br>and<br>SYTONNIA MOORE<br><br>    Plaintiffs,<br><br>v.<br><br>REGINALD SCANDRETT,<br>In his Official Capacity as<br>Sheriff of Henry County, GA,<br><br><br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action File No.: _____<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs **Shianne Jones and Sytonnia Moore** file this civil action for relief and damages against Defendant **Reginald Scandrett** in his official capacity as Sheriff of Henry County, Georgia based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. Shianne Jones ("Ms. Jones") and Sytonnia Moore ("Ms. Moore") were both employed within the communications department of the Henry County

1

Sheriff's Office ("HCSO"). Ms. Jones, who was temporarily impaired by an automobile accident, brings a disability discrimination claim under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C.A. § 794, and she and Ms. Moore both bring retaliation claims under the Rehabilitation Act and the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4(d)(2).

2. Additionally, Ms. Jones alleges that her rights were violated under the Equal Pay Act of 1963, 29 U.S.C.A. § 206, in that she was paid substantially less than a male counterpart in her department who performed comparable duties.

3. Plaintiff's claims are brought against Reginald Scandrett ("Sheriff Scandrett") in his official capacity as Sheriff of Henry County, Georgia.

4. Plaintiffs each seek economic damages of back pay, and with respect to Ms. Jones' Equal Pay Act claim, liquidated damages; as well as compensatory damages for emotional distress and punitive damages under the GWA. Both plaintiffs petition the Court for their attorneys' fees and costs of litigation.

## THE PARTIES

5. At all times relevant to this lawsuit, Ms. Jones and Ms. Moore were both public employees of HCSO.

6. At all times relevant to this lawsuit, Reginald Scandrett was the elected sheriff of Henry County, Georgia. This suit is initiated against him in his

official capacity, and is therefore the functional equivalent of a claim against HCSO.

7.     Prior to her termination, Ms. Jones was an individual with a temporary disability based on injuries that she sustained in an automobile accident that limited her capacity to work, sit, or stand for extended periods. Ms. Jones could have performed the essential duties of her job with reasonable accommodations.

8.     HCSO is a government entity created by the laws of the state of Georgia that receives federal financial assistance in the form of multiple law enforcement grants provided by the United States Departments of Justice and Homeland Security, and is therefore subject to suit under the Rehabilitation Act. 29 U.S.C.A. § 794(a)-(b)(1)(A).

**PERSONAL JURISDICTION**

9.     Sheriff Scandrett may be served with proper process at the location of HCSO's headquarters at 120 Henry Parkway, McDonough, GA, 30253.

**SUBJECT-MATTER JURISDICTION AND VENUE**

10.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331, 1343, and 1367.

11. Venue is proper in this Court under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division, and the events or omissions giving rise to the claim occurred in the same venue.

## FACTUAL ALLEGATIONS

### General background

12. In 2020, Reginald Scandrett was elected sheriff of Henry County, Georgia, a suburban county located in the metropolitan area of Atlanta.

13. Ms. Jones was hired in June 2021 as a social media specialist in the communications department of HCSO. Her role focused on generating social media content and developing strategies to elevate HCSO's and Sheriff Scandrett's online visibility.

14. In August 2023, Ms. Moore was named Communications Manager and Chief Public Information Officer for HCSO. Ms. Moore is a veteran media figure in the Atlanta area and has held highly visible roles as an on-air personality in broadcast radio. Her duties at HCSO included serving as the primary point of contact for media outlets and acting as a spokesperson for Sheriff Scandrett.

15. Ms. Moore was the direct supervisor for Ms. Jones and Brian Williams, a male employee who held the position of video production manager.

16. In the spring of 2023, Tamarlion Carter was hired by Sheriff Scandrett as the Director of Communications. Ms. Moore reported to him.

17. Stephanie Cross, an attorney in McDonough, Georgia, serves as the part-time General Counsel for HCSO. Cross exercises primary responsibility for advising Sheriff Scandrett and senior-level appointees on matters related to federal and state employment law.

18. Michelle Myrick-Simmons is the Human Resources ("HR") Manager for HCSO and administers the leave management process for employees.

**Ms. Jones' injury and application for accommodations and leave**

19. In early April 2023, Ms. Jones was seriously injured in an automobile accident that resulted in injuries to her spine, lower back, and sciatic nerve.

20. Due to the injuries she sustained, Ms. Jones experienced persistent pain and quickly discovered that she could not sit or stand for prolonged periods without experiencing great discomfort.

21. Ms. Jones' condition required her to begin seeing a chiropractor three times a week and to undergo treatment from a neurological specialist as well.

22. As her time out of office for doctors' appointments started to mount, and as she physically struggled with getting through the workday, Ms. Jones began

to explore with her supervisor, Ms. Moore, the feasibility of obtaining disability-based accommodations.

23. Ms. Moore advised Ms. Jones to make a formal request with the HR department to convert her status to remote work. Ms. Moore also advised Communications Director Carter that Ms. Jones' core job duties were almost entirely virtual in nature and that teleworking would in no way disrupt the department.

24. Ms. Jones was permitted to shift to telework beginning April 24, 2023, and worked at home until May 26, when Director Carter abruptly told her that it was necessary to return to full-time in-office work.

25. At the time Ms. Jones was ordered to resume an in-person schedule, HCSO permitted multiple employees to work remotely full time for reasons related to their personal convenience with no legitimate health-based rationale.

26. Due to her continuing health struggles and her treatment schedule, Ms. Jones had no choice but to begin exhausting her personal and sick leave. Ms. Jones also sought guidance from her supervisor, Ms. Moore, as to the options available to her.

27. Ms. Moore advised Ms. Jones of several applicable federal laws that affected her status, specifically the provisions regarding reasonable

6

accommodations for medical impairments contained in the Americans with Disabilities Act ("ADA"), and the availability of up to twelve weeks leave for persons with serious health conditions as mandated by the Family and Medical Leave Act ("FMLA").

28. While precedent in this circuit prevents state entities such as HCSO from being sued for damages under the FMLA and the ADA, employees of such entities still enjoy the full rights and protections codified in both statutes. The personnel handbook for HCSO employees recognizes as much in its description of employee rights.

29. Ms. Jones initiated the process of applying for FMLA leave in late May 2023.

30. On May 31, 2023, Ms. Jones also filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

**Aftermath of Ms. Jones' EEOC charge**

31. On or about June 5, 2023, HCSO received formal notice of the EEOC charge. Sheriff Scandrett was notified by Counsel Cross the same day, and HR Manager Myrick-Simmons was informed within a day.

32. On June 6, Myrick-Simmons apprised Ms. Jones that Sheriff Scandrett had been extremely critical of Ms. Jones for making a formal complaint to a

federal agency and that he had referred to her as "disloyal" and "untrustworthy." Myrick-Simmons also shared with Ms. Jones that Sheriff Scandrett had instructed personnel to avoid contact with her and that Myrick-Simmons specifically had been instructed to refrain from engaging with Ms. Jones regarding the continuation of the FMLA application process.

33. For the ensuing six weeks, Ms. Jones received no information about the status of her FMLA request. At one point, when she inquired about her status, as her personal and sick leave dwindled, Director Carter instructed her that her job was protected as her leave request was "under review."

34. On or about July 11, 2023, Ms. Moore was summoned to a meeting with Sheriff Scandrett, Communications Director Carter, Counsel Cross, and HR Manager Myrick-Simmons. Ms. Moore was questioned repeatedly by Cross and Sheriff Scandrett about whether she had advance knowledge of the EEOC charge or had encouraged Ms. Jones to file for FMLA leave.

35. Ms. Moore admitted to counseling Ms. Jones about her legal rights under the ADA and the FMLA and expressed her view that HCSO was putting itself at legal risk by denying Ms. Jones leave or precluding her from working remotely, and that a lawsuit could create unfavorable publicity.

36. Sheriff Scandrett declared during the July 11 meeting that he intended to declare that Ms. Jones had been absent without leave as a pretext for firing her. Sheriff Scandrett remarked that Ms. Jones was vulnerable to this ploy because she had never completed the FMLA application process and had not filled out an application for leave without pay ("LWOP").

37. Later the same day, Ms. Moore advised Ms. Jones that it would be in her interest to reinitiate the FMLA leave application process and to submit an LWOP application. Ms. Jones did so within the next 24 hours.

38. The next day, July 12, Counsel Cross confronted Ms. Moore again with a warning that her actions in advising Ms. Jones to seek FMLA leave after her remote request and her express advocacy for Ms. Jones' rights during the July 11 meeting of senior leadership reflected that Ms. Moore was not a "team player."

39. On July 13, Cross sharply questioned Ms. Moore about whether she had tipped off Ms. Jones about Sheriff Scandrett's intentions to fire her or whether she had advised Ms. Jones to immediately seek coverage under the FMLA and the LWOP program.

40. Ms. Moore acknowledged that she had encouraged Ms. Jones to file FMLA and LWOP requests, to which Cross replied, "I wish you hadn't done that."

41. Within four days, on July 17, Ms. Moore was suddenly placed on administrative leave, ostensibly on the grounds that Sheriff Scandrett had decided to conduct a sudden "evaluation" of the communications department. Ms. Moore soon learned that she was the only employee in the department who was placed on leave.

42. On July 21, an HCSO deputy approached Ms. Jones at home and sought her signature on a document that acknowledged she had been off for an extended period without authorization. Ms. Jones adamantly refused.

43. On July 24, 2023, Ms. Moore was notified that she was being terminated on the vague grounds that her employment was at-will and that her services were no longer needed.

44. On July 27, 2023, Ms. Jones received correspondence from HCSO dated July 21, the day of her encounter with the deputy, indicating that she was being terminated.

**Ms. Jones' pay disparity claims**

45. During the course of Ms. Jones' employment, prior to her unpaid absence from June to July 2023, she was compensated at an annual salary of $43,000.

46. Within approximately three weeks of Ms. Jones' hiring, HCSO hired a male, Brian Williams, to join the communications department as a video production manager.

47. Williams' job was to film HCSO events for distribution on social media and for other promotional purposes. Despite the title of "manager," he did not supervise any other employee, including Ms. Jones.

48. In contrast with Ms. Jones, Williams was paid $70,000 a year. Their responsibilities at all times remained comparable in scope; in fact, on repeated occasions, when Williams struggled with performing videography tasks, Ms. Jones was assigned by Director Carter to assist with or take over assignments initially given to Williams.

49. Ms. Jones also possesses a degree in communications, a credential that Willams did not have. Williams conceded at one point to Ms. Moore, his immediate supervisor, that he had no training or credentials in the communications field, and lamented to her that he was overmatched to the point that "[I have] no clue what I am doing."

50. When Ms. Jones raised concerns about her compensation to Director Carter, he responded by changing her title to social media coordinator and revising

11

Williams' title to production coordinator. Despite this putative effort to equalize their roles, the disparity of over $30,000 was maintained.

51. In fact, after the adjustment to their new titles, Williams' pay was actually increased to $75,000, while Ms. Jones' compensation remained unchanged.

## CAUSES OF ACTION

## COUNT I

**(by Shianne Jones)**

**(Discrimination in violation of the Rehabilitation Act)**

52. Plaintiff Jones incorporates by reference the preceding factual allegations in paragraphs 1-51.

53. Ms. Jones is an individual who suffered from a disability in that she was impaired after an automobile accident that limited her capacity to stand and sit for extended periods and that required periodic absences from work to obtain medical treatment.

54. Ms. Jones was qualified to perform the essential functions of her job with the reasonable accommodation of remote work or, alternatively, was entitled to an accommodation in the form of a temporary leave until she recovered physically.

55. The Henry County Sheriff's Office is a department of the state of Georgia that receives federal financial assistance and is therefore subject to liability under the Rehabilitation Act through this lawsuit against Sheriff Scandrett in his official capacity. 29 U.S.C.A. § 794(b)(1)(a).

56. Sheriff Scandrett and the Henry County Sheriff's Office discriminated against Ms. Jones because of her disability, by failing to provide a reasonable temporary accommodation.

57. As a result of Defendant's disability-based discrimination, Ms. Jones is entitled to recover monetary damages, including but not limited to back pay.

## COUNT II
### (by Shianne Jones)
### (Retaliation in violation of the Rehabilitation Act)

58. Plaintiff Jones incorporates by reference the preceding factual allegations in paragraphs 1-51 and 55.

59. Ms. Jones engaged in protected activity under the Rehabilitation Act, 29 U.S.C.A. § 794(a),(d), in that she asserted her rights under the Act by lodging a charge of disability discrimination with a federal agency, relying on the protections of the Americans with Disabilities Act, which is governed by the same substantive standards for liability as the Rehabilitation Act.

60. Ms. Jones' protected activity under the Rehabilitation Act was the basis for unlawful retaliatory mistreatment by Sheriff Scandrett in his official capacity, including interference with her rights to obtain accommodation or medical leave and her subsequent termination.

61. As a result of Defendant's retaliatory conduct, Ms. Jones is entitled to recover monetary damages, including but not limited to back pay.

## **COUNT III**

**(by Shianne Jones)**

**(Retaliation in violation of the Georgia Whistleblower Act)**

62. Plaintiff Jones incorporates by reference the preceding factual allegations in paragraphs 1-51.

63. Ms. Jones, a public employee of the Henry County Sheriff's Office, engaged in protected activity under the Georgia Whistleblower Act, O.C.G.A., § 45-1-4(d)(2), in that she disclosed a violation of or noncompliance with a law to a government agency.

64. Because of her protected activity, Defendant terminated Ms. Jones.

65. As a result of Defendant's retaliatory conduct, Ms. Jones is entitled to recover monetary damages, including lost back pay, noneconomic compensatory

damages for emotional distress and mental anguish, and punitive damages based on Defendant's willful indifference to her lawfully protected rights.

## COUNT IV
### (by Sytonnia Moore)
### (Retaliation in violation of the Rehabilitation Act)

66. Plaintiff Moore incorporates by reference the preceding factual allegations in paragraphs 1-51 and 55.

67. Ms. Moore engaged in protected activity under the Rehabilitation Act in that she opposed and took efforts to thwart discriminatory practices by Defendant based on Shianne Jones' disability.

68. Ms. Moore's protected activity under the Rehabilitation Act was the basis for her unlawful termination by Defendant.

69. As a result of Defendant's retaliatory conduct, Ms. Moore is entitled to recover monetary damages, including but not limited to back pay.

## COUNT V
### (by Sytonnia Moore)
### (Retaliation in violation of the Georgia Whistleblower Act)

70. Plaintiff Moore incorporates by reference the preceding factual allegations in paragraphs 1-51.

71. Ms. Moore, a public employee of the Henry County Sheriff's Office, engaged in protected activity under the Georgia Whistleblower Act, O.C.G.A., § 45-1-4(d)(2), in that during a meeting with her supervisory chain of command at HCSO, she raised objections to the office's denial of leave or medical accommodations to which Shianne Jones was lawfully entitled.

72. Because of her protected activity, Defendant terminated Ms. Moore.

73. As a result of Defendant's retaliatory conduct, Ms. Moore is entitled to recover monetary damages, including lost back pay, noneconomic compensatory damages for emotional distress and mental anguish, and punitive damages based on Defendant's willful indifference to her lawfully protected rights.

## COUNT VI
**(by Shianne Jones)**
**(Equal Pay Act)**

74. Plaintiff Jones incorporates by reference the preceding factual allegations in paragraphs 1-51.

75. Defendant paid a substantially lower wage to Ms. Jones than it paid a male employee despite the fact that they performed equal or comparable work.

76. Based on Defendant's unlawful wage-based gender discrimination, Plaintiff is entitled to economic damages including back pay and liquidated damages.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiffs demand a trial by jury and that the following relief be granted:

A. Back pay, and to the extent applicable, as liquidated damages.

B. Compensatory and punitive damages under the Georgia Whistleblower Act.

C. Attorneys' fees and costs of litigation.

D. Prejudgment and post-judgment interest at the highest lawful rate.

E. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted the 21st day of March, 2024.

**HKM Employment Attorneys LLP**

<u>s/Artur Davis</u>
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North
Suite 212
Birmingham, AL 35203

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

Direct: 205-881-0935
adavis@hkm.com

Jermaine "Jay" Walker
GA Bar No. 142044
3344 Peachtree Road NE
Suite 800
Office No. #35
Atlanta, GA 30326
Direct: 404-301-4020
jwalker@hkm.com

**Attorneys for Plaintiffs Shianne Jones and Sytonnia Moore**

18